Good morning. May it please the Court. I'm Todd Bank, and I'm speaking on behalf of the appellant. I want to talk about one of the key issues, which is whether Conagra's representations were that the entry of an online code entry would cause one meal to be provided to a hungry child. And some of the representations include one of them is in 2012 and 2013, when their advertising materials said, quote, One dollar equals eight meals secured by Feeding America. In 2015, their advertising said, quote, One code feeds one more. One code, online code entry, feeds one more. So I don't see how there's any question that the reasonably understood meaning, and no doubt the intent on Conagra's part, was to make people think that by entering a code online from a Conagra product, that one hungry child would be given a meal. The problem with that, and it would be also the same if we're just talking about whether the online code entries enabled a meal to be provided, which is a little softer, is that it was based on a complete false use of statistics. And those statistics are basically... Let's be clear about what wasn't false. First of all, the money went to the supplier of the food, correct? Well, we're not disputing that, so I would assume. All right. And that was referred to in many of the representations or papers, that there was this other entity involved. Yes. So my understanding is that a fair reading of this is that the representations were that the money was going to the company that was going to supply the food, and that that company would then supply food, subject to a limitation, subject to a limitation of the amount, at least as far as Conagra was concerned. And then, but it was generally to feed people. But not necessarily dollar for dollar, dollar to go in and dollar resulting in a meal. Well, that's a distinct issue, and that's the first issue about the direct cause and effect. Does the online code entry result in one meal being provided? Let's say it doesn't. We think it does, but let's just say it doesn't. But certainly they, at minimum, represented, and the district court seemed to agree in its reconsideration order, that the claim of the representations by Conagra were that the online code entries or one online code entry would at least enable Feed in America to provide one meal, not five meals, not half a meal. There was a correlation. There was a cause and effect. Whether Feed in America actually used the money for that, who knows. But the point is, that representation that the online code entry, an online code entry would enable, would enable one meal to be provided was completely false. It was based on the complete fraudulent use of statistics. It was based on a correlative statistic, not a marginal one. So you're saying that this was a violation of the District of Columbia Consumer Protection Act? Well, that too, and a breach of contract, but related but not identical reasons. Well, that's a separate matter, and the question of the District of Columbia Consumer Protection Act is whether or not a purchase is required, because here, a purchase isn't required. A person could just get the code off the grocery store shelf and then use it without buying. The statute requires that a purchase is made, but what it doesn't require is that the defendant, in turn, required a purchase to be made. Obviously, people bought, yes, could someone go to the grocery store, write down a code entry? Absolutely, it could happen. But it's clearly implied, if not stated explicitly, that of course purchases were made. So yes, would a class member who- The idea was to get people to buy them, but it wasn't required. Right, that's right. But again, if a purchase was in fact made, a class member who didn't make a purchase wouldn't be entitled to a relief. But your client didn't allege that a purchase was made. That was the issue about whether the complaint should be allowed to be amended. And as long as an amended complaint can be consistent with what we have alleged, it should be allowed. In other words, we haven't alleged, for example- But wasn't there a telephone conference where the district court specifically said that this statute grants a cause of action to consumers which is defined as people who purchase? So you were on notice and there was an amendment and there's still no allegation of purchase. It was the plaintiff's belief that one did not need to specifically or explicitly allege a purchase. As we state in our briefs, the district court completely mischaracterized that phone conversation. You had the opportunity to amend. You didn't amend. There's no allegation of purchase currently. Until we received the defendant's papers, until we read the judge's decision, it was our opinion that we didn't have to make that allegation. But this idea that it's almost like a game, it's not even true factually, but let's even say it was, that the lawyer said, this will be the last time I ever amend the complaint, like it's a game, that now that I amended the complaint and I should have done it this way but I didn't, and now therefore the plaintiff's rights cannot be exercised is frankly ridiculous. As long as the, it's not like the judge made her ruling and then we still didn't make the allegation. It was our belief after this phone conference that we still didn't need to allege. Yes, it was an issue. We understood the defendant's position was not ours, but we didn't agree with it yet. We had an informal discussion on the phone. That should not preclude us from amending the complaint as long as an amendment would otherwise be appropriate, which it certainly would be here. Can I return to the contract question for just a moment? Sure. So your adversary says that this was not, can't be construed as a definite and clear offer because you couldn't accept at the moment that you entered your code, you couldn't have known whether the amount, the max, the cap on the donations that would be made had been reached, so you couldn't know that you were accepting or not. And you point to the 2015 counter. Am I right in understanding that that is a counter that only exists for 2015? Yes, that's true. That is true. So with regard to the other years then, what's wrong with your adversary's argument? Because one doesn't have to know that a unilateral offer is open in order to accept it. And I gave the example in the briefs. The police are looking for a criminal suspect. They say $10,000 reward if you turn the person in or locate the person and report him to us. And they have a description. I see a person. He fits the description. I don't know if it's really that person. I don't have a photograph, but I think it might be. So I call the police. Police officer says to me, Mr. Bank, do you know for a fact that we haven't yet gotten the suspect in custody? Do you know for a fact that our offer of a reward is still open? I say, no, I have no idea, but I think this guy looks like him, and if it is him, I better get my reward. And if it is him, I would get my reward. The idea that someone has to know that an offer is open, a unilateral offer to accept it, is just not true. Again, different example from the briefs. Someone loses an iPhone. There are lots of iPhones out there. So let's say I find the iPhone. I don't know if it's that person's iPhone. He says he lost it in the courthouse. I find an iPhone in the courthouse, and there's a reward offer. Is this your iPhone? I have no idea. He might say no. He might say it's not mine. I already got mine back, whatever the case might be. If it's his iPhone and he offered the $100 for the person to return the iPhone, I'm entitled to the $100. But that's disregarding the general rule in New York, and correct me if I'm misunderstanding it, that promotions, generally speaking, do not constitute offers under New York law. The examples you're giving are not promotions. In the promotion context, if the advertisement says, while supplies last, and you call up and say, hey, can I get one? No, supplies are gone. We generally don't conceive of that as an acceptance of an offer. Well, that's right. And you're referring, obviously, I assume, to the Amalfitano case, and that was the key dispute. The key dispute wasn't the general meaning or effect of a while supplies last disclaimer. It was whether that disclaimer, in fact, applied to the coupons. It was basically an issue of grammar. There was not a dispute as to whether the coupons actually had run out. Well, once the Court found that the while supplies last disclaimer did, in fact, apply to the coupons, there was no dispute that as long as the coupons had run out, which we didn't dispute, the attempted acceptance of the unilateral offer was no good because the offer by its terms had expired. There's also the other issue about a while supplies last disclaimer, which is that it's kind of vague and uncertain. Maybe it means that the person who makes the offer can say, okay, no one knows what the amount of supplies are, so at 9 o'clock they have supplies, at 10 o'clock they say, you know what, no supplies. At 11 o'clock they have them, and so on. This case is completely different. But where has been the mutuality of the meeting of minds in that situation? In the situation where the person doesn't understand that the limits have been reached, doesn't know that the limits have been reached. But then the offer would be revoked by its terms. There's uncertainty under those circumstances as to whether there can be performance. But then again, if the coupons, or in this case the online code entries had, I'll use the word expired, the maximum donation hadn't been reached, then there would be an attempted acceptance. Again, it's the same thing with the reward for a lost product, or what have you, the examples I gave earlier. You don't have to know whether the offer is still open to accept it. The difference also with the coupons is, as the Amalfitano court, I think the first one said, was that with a coupon- Let me go to one other thing. The acceptance here, on your theory, is the input of the code, is that correct? Correct, yes. If it's a unilateral offer, if it's a bilateral contract, then that's an offer itself. You're making an argument the other way that I do not understand. I'm sorry? You're making an argument the other way that I don't understand that the consumer, in effect, somehow is making the offer. Well, sure, if the promotion is an invitation for offers- On what terms? On the terms of the participation, the terms are clear. If it's an invitation for an offer, the terms are very simple. If you make an online code- The acceptance precedes the offer. No, no, the district court completely misunderstood that, so I'll explain. You tell me how- I thought we did in our briefs, but I'll explain, I'm happy to explain it. The terms were, if it were an offer, if it were an invitation for offers, were if you make an offer by entering an online code, and we haven't reached that special maximum number of codes, and the end date of the promotion hasn't been reached, we will give this money, the $0.10 or $0.11 or whatever, to Feed in America. So by entering the code, per those terms, you are offering. You're saying, okay, I am offering or I'm proposing that by entering this code, this is my way of essentially communicating, that you will make that $0.11 or $0.10 donation. It was after the entry is made, entries were made, that ConAgra then said, we will give $0.11, whatever the words are, to Feed in America. Of course, the acceptance is similar in terms of its general language to the original advertisement, but that would always be the case. If I said to you, I will give you a widget if you give me $5, and you hand me $5. Well, if I said to you, having given me $5, Your Honor, I'm going to give you a widget. Well, that language is very similar to what I proposed, but of course I've accepted your offer. It's no different here if it's a bilateral contract. There's no difference. The district court, by saying that we were claiming something that makes absolutely no sense, by the way, that the acceptance was the same thing as the invitation for offers or as the offer itself, was complete nonsense. It makes no sense either factually or legally in any respect. What is the manifestation of the acceptance of that offer? In the event of a bilateral contract was ConAgra's statement after the offer is made, that is after the online code entry is made, saying, I don't know the exact words, but they acknowledge the receipt of the code entry and says, okay, we are now going to thank you for your entry. We will give $0.11 or one meal, whatever the language is, to Feed in America. Where was that offer? On the website. On the website? Yes. So it wasn't directed at any particular customer? Yes, it was directed to the person who entered the code. No, it wasn't on the website. If you went onto the website and you didn't enter a code, it didn't say thank you for entering the code. I'm sorry? John Doe, you've just entered a code. They don't know your name. So what? Why would that matter? That's not a direct acceptance. Yes, it's direct. It's a direction that they put out in the first place. But the acceptance is direct. If I go on the website, it's not going to say before I do anything, thank you for entering the code. We'll give $0.11 to Feed in America. It's if I enter a code before the maximum number has been reached and before the promotion ended, that in response to my entry of a code, ConAgra says on the website, thank you for entering the code. We will give $0.11 to Feed in America. That's an acceptance. If I walked into the store, they wouldn't know who I was either. So what? So what it is is a general statement on the part of the company to everybody, to the world, on its website, that to those people who have entered codes, this is what we're going to do. Is that what you're saying? Well, that's what the ‑‑ if it's an offer or an invitation for an offer, sure. Look at the Lefkowitz case. It was an ad in the newspaper, i.e., public. First people to come in and give us a dollar on Saturday, whatever, we will give a fur coat to that person. They don't know how many people read that ad. It went out to the general public. And when a person showed up and offered the dollar, they didn't know the guy's name, I assume, or the woman's name. That ad went out before the coupon or whatever it was, the act of the purchaser was conducted. Yeah. Yeah, okay. I'm not sure I see what you mean. Well, you're saying normally an acceptance follows an offer. Sure. In this case, the acceptance, the language of the acceptance precedes the offer. No, no, no. The language of the acceptance is the original statement, isn't it? Is it not? No, no. Iconogra? No, again, it's the same example I gave earlier. If I say to you, if you give me $5, I'll give you a widget, okay? Now you come in and you give me the $5. No, no, no. In this case. Okay. What happened? What was the order in which ‑‑ how was the acceptance manifested? In the event that it's a bilateral contract? Yes. Okay. There was an invitation for offers, which was if you ‑‑ we are inviting people to submit codes. Invitation for offers. We're inviting people to submit codes. But then when ‑‑ but then how ‑‑ the acceptance, the terms of the acceptance were conveyed prior to the offer under this scenario. Well, any time there's an invitation for offers, of course it's going to indicate how acceptance would be made. As in, if you come into my store and give me a dollar, I'll give you this. Obviously, it's understood that the acceptance is going to be that when you give me a dollar, I will say, I'm going to give you this, and then I'll give it to you. So, how is it any different here? They say, we're inviting ‑‑ if it's bilateral. We're inviting offers, and here's how you make an ‑‑ here's how we're inviting offers. You make an online code entry, and if we accept the offer, and we will accept the offer if we haven't reached the maximum and the date hasn't expired. The moment the offer was made, was there a contract? No. Not ‑‑ well, not if it's a bilateral contract. No. The contract became complete in the event of a bilateral contract, this is. The contract would have become complete when, after a person entered the online code, ConAgra then said, thank you, we will give 11 cents to Feed in America in response. Mr. Beck, then they did do that. They did pay the money, or contribute the money. As far as we know, they did. But, again ‑‑ Where's the beef? Because the beef is, no pun intended, but the beef, Your Honor, is that the whole campaign was based on a falsity, which is that, and it's a falsity either way. It's a falsity whether the representations of ConAgra are understood to mean that the qualified online code entries, the ones that are accepted or constitute acceptance, if it's a unilateral contract, would cause one meal to be given to a hungry child, or simply enable a meal to be given to a hungry child. For example, let's say ConAgra spent $100 and they gave 100 meals, dollar per meal. Okay? And all of a sudden, the national donors that they referred to gave them a whole boatload of more food, more meals. So now the average cost per meal would be now, say, two cents per meal, whatever it is, instead of a dollar per meal. That does not mean that the next two cents would cause another meal to be given, and it does not mean that another two cents would even enable a meal to be given. Maybe the next meal that Feed in America wanted to obtain would cost another dollar. That's for discovery. But the whole, in other words, in essence, what they were doing is taking general statistics and trying to convey them as having a marginal meaning, which they simply didn't, as in, the next donation will have the following effect. It was completely made up. It was completely made up. They've never disputed that it was made up. They simply said, oh, it shouldn't be understood that way because we gave them money. And then what makes it even far worse is that under the contracts, which, of course, they don't disclose to the public, but under the, although they're publicly available, they don't disclose them on their website, neither Feed in America nor ConAgra, the contracts in each year specifically say that the money is going to be given not for the purpose of feeding children or obtaining food or meals, but for operational costs and legislative advocacies, and in each year it was either most or all of the money that was slated for those causes. Now, what ConAgra argued and what the district judge essentially said in different words was that, well, what's the difference? Money is fungible. Well, there is a difference, and that would have to be dealt with in discovery. I don't know if the money – I'm sorry? We've taken a lot of your time. You've reserved three minutes for rebuttal. Do you want to use some of them now or do you want to – I'll wait. Thank you. Good morning, Your Honor. Jim Frost on behalf of ConAgra Foods. We are dealing in this case with a promotion of a charitable initiative in which ConAgra promised to donate money up to a stated maximum amount to a third-party charitable organization, Feeding America. Importantly, there is no allegation in this case that ConAgra did not make that donation. The district court found that ConAgra made the maximum potential donation, and plaintiff does not challenge that finding. So apart from the question of whether or not a contract was formed, it's clear that there could not have been any breach. ConAgra did as it said it would do. Under plaintiff's allegations, however, no contract could have been formed. The district court carefully reviewed the actual language in ConAgra's promotion and found that no agreement exists. The court recognized the general rule under New York law that advertisements for the sale of goods are not offers. Rather, they are only invitations for offers and thus do not create the power of acceptance. Only one exception to that rule, Your Honor, is where the advertisement is clear, definite, and explicit and leaves nothing open for negotiation. Importantly here, the district court recognized that ConAgra's promotion did not even rise to the level of an advertisement for the sale of goods. The promotion did not directly advertise the sale of ConAgra products. There was no purchase required to participate in the promotion. There was no cost associated with participation in the promotion. The only requirement to participation was that someone enter a code on ConAgra's website. The district court found that the promotion was merely a promise to make a donation, only a promotion. It did not even rise to the level of an invitation for an offer. It's clear from the district court's two opinions that the exception to the general rule was not satisfied. There was no clear, definite, and explicit terms to reach a meeting of the minds. The very fact that the district court disagreed with the plaintiff as to what a reasonable person would understand from the terms of the promotional materials tells you that there could not have been a meeting of the minds. That in itself answers the question, was there clear, definite, and specific terms such that a contract could have been created? The court found that the promotional materials unequivocally stated that ConAgra would make a promise to make a monetary donation up to a maximum amount. In contrast, the plaintiff reads those same materials and alleges that ConAgra promised to cause one meal to be provided. If we look at the actual promotional materials that were put into the record through Mr. Banks' declaration, you will see that they clearly state the amount of money that ConAgra would donate for each code entered. They also inform the participant what that monetary donation means in terms of meals based on Feeding America's costs. Plaintiff's real quarrel here is with how Feeding America calculates the cost of a meal. Plaintiff alleges that Feeding America uses a correlative statistic to calculate the cost as opposed to a cause and effect statistic. I have no idea what either of those really mean. But importantly, Your Honor, and this is, Your Honor. I thought it was done by taking the total revenues of Feeding America and dividing it by the number of meals that they had actually provided. I believe that's how he alleges that Feeding America calculates costs. But that doesn't address your point, which is that the donation was not to pay for a single meal. It was a donation that equated to a meal, but it was a donation to Feeding America that could be the equivalent of a meal because that's what a meal cost under their calculation. But your point is that it wasn't, I guess, that there wasn't a direct causal connection made. That is correct, Your Honor. And even more to the point of whether or not there were clear, specific, indefinite terms, plaintiff alleges in the amended complaint that the promotional materials, the same materials that constitute the contract, misrepresent the cost of a meal and are consequently misleading. That allegation, Your Honor, in my view, is dispositive of the contract claim. It's an unequivocal admission that the alleged terms of participation are not clear, definite, and explicit. Plaintiff cannot have it both ways. The promotional materials cannot be clear, definite, and explicit, and at the same time be misleading. Plaintiff alleges that ConAgra promised to donate the cost of one meal for each code entered, but nowhere within the amended complaint does plaintiff define what the cost of one meal is. There is no recognized standard that we can consult to determine what the cost of one meal is. What the cost of a meal for me, I think, is different for the cost of a meal for others. People have inherently different understandings of what the cost of a meal is. By its very nature, it's a wholly ambiguous term. So if we accept the plaintiff's interpretation of the contract, it can't be a contract because it's not clear and definite? It does. If you accept the plaintiff's theory that ConAgra promised to donate the cost of a meal, such a promise cannot satisfy a test that requires terms which are clear, definite, and explicit, and require nothing for negotiation. It simply cannot. All things considered, the court correctly concluded that there was no meeting of the minds, that there was no contract. Could I ask if you could address your adversary's argument that the district court misunderstood his bilateral contract theory, that ConAgra did, say, make some assent to the offer as he construes it? Well, Your Honor, that is not what is alleged. That was not what was argued below. That is not how I even understood the written arguments presented to this court. Let's be clear on what the that is, the response to the offer. You're saying that that was not what was alleged. What do you understand? So we're talking about the same thing. What do you understand now that he's saying in terms of how the offer was accepted? I understood the Appley's argument this morning to suggest that after a code was entered, there was another screen that jumped up on the website that thanked the participant for entering the code and stating that ConAgra would donate $0.10 or $0.11. That was not pled. That was not argued. The theory below and the theory that the district court addressed was one that stated that the entry of a code was an invitation, which was accepted by the statement on the website that said, we'll make a donation in response to the online entry. It's the very same statement that is embraced within the terms of participation and is the court. That's different from the promotional material that you're talking about. That's a specific statement on the website to the person who enters the code. Is that correct? Well, under the theory that. Back at that person individually. Under the argument presented today, I understood that there was a second screen that came up. That wasn't what was argued below. That wasn't what the district court addressed. It's not alleged in the complaint. And it's not alleged in the complaint. But if it was, I mean, give it some thought. If there was to be a meeting of the minds, one, it suffers from the same inherent problem. It just doesn't meet the test for specific, definite, and explicit terms. But the only way there could be a bilateral contract is if ConAgra understood the invitation and accepted the terms of the invitation. If ConAgra stated in response, as Mr. Banks argued, if ConAgra stated thank you for your entry, we will donate $0.11, ConAgra understood the invitation as an offer inviting ConAgra to donate $0.11. It doesn't make sense. In this case, there's no dispute that ConAgra did. There could be no breach in that situation. Mr. Foros, can I ask you a question about the consumer protection claim? I understand that there's no allegation that the plaintiff purchased any goods. That's what the district judge said, right, district court said. But goods were purchased. I mean, it's sort of crazy to think that there weren't goods being purchased in light of this promotion. Maybe it wasn't alleged, but maybe that's something that could be fleshed out in discovery if the case went back. There were purchases of goods, even though it may not have been explicitly a requirement of this promotion. The statute says it's an unlawful trade practice to make misrepresentations as to a material fact in connection with consumer goods or services that an individual purchased. Well, they did purchase. Certainly the promotion was intended to indirectly promote the sale of ConAgra products as well, and certainly ConAgra products were purchased, I assume, by people who also participated, but not as part of the same transaction. They're separate and different transactions. Was there an allegation? Could there be an allegation that McCabe purchased? There's no allegation in the complaint now that he purchased. There's no allegation in the complaint that Mr. McCabe or any member of the alleged class. He's a representative of the class, right? He is, and he makes no allegation that he purchased. You are correct, Your Honor. I mean, if he's a non-purchaser, he can't represent a class of purchasers, can he? I would not think so. I would not think so. But clearly in the pre-motion letter, Your Honors, ConAgra raised the point that there was no consumer transaction alleged in connection with the Consumer Protection Act claim. The plaintiff was given, with an understanding that that was the defect in his pleadings that we were challenging, he was given the opportunity to amend, and the court, I recall in very clear terms, expressed to him that it needed to be his best and last pleading. He did amend. He did amend, and he did not allege a consumer transaction. Unless there's any other questions, Your Honors. Thank you. Mr. Bank? Yes. It just seems to me, Mr. Frost alluded to this, it just seems to me that your real quarrel here is with Feeding America, that they didn't do with the money what they said they were going to do, and that perhaps they're not a particularly deep pocket, ConAgra is, and therefore, let's go after ConAgra for something that Feeding America did wrong. I mean, that's, I think, what he's suggesting. He might or might not be. First of all, we're not obligated to name Feeding America, but second of all, ConAgra I'm just trying to figure out why are you suing ConAgra if Feeding America was the one that did the bad stuff. Because I don't know that Feeding America did anything bad. ConAgra agreed. ConAgra contracted with Feeding America that the money, most or all, depending on the year, would go to causes other than providing meals. The statistic about the cost per meal came from Feeding America, but our gripe is, if you will, our complaint is not with what Feeding America did in terms of the statistics, it's what ConAgra did with that. I don't know that Feeding America represented the cost per meal as a marginal statistic, as in the next ten cents we'll buy a meal. It's ConAgra that did that. But I just, if I, I know I have a little time, but there are. ConAgra did supply the money to Feeding America. As far as we know, we assume that, yes. I mean, that seems beyond dispute. But again, let me go back. I have a few points I'd like to make in my limited time, if I may. The idea that because the terms were misleading, they weren't definite enough is complete nonsense. The terms were clear. What was misleading is that ConAgra didn't abide by those terms. If I tell you I'm going to give you six cans of soda for a dollar, and you give me a dollar, and I give you five cans. My statement that I will give you six is misleading, but it's not unclear. It's not vague. It's perfectly clear. So the argument, it just makes no sense. ConAgra didn't do what it said. It only did part of it. Yes, ConAgra said we give money to Feeding America, and we assume it did. But ConAgra also talked about what that money would go for. What if ConAgra in the contract said all this money that we're giving you will go for new furniture at Feeding America's headquarters? That would be a compliance with the contract that says, or the proposal that says one meal, $1 equals eight meals, the next online code entry equals a meal. You'll enable a meal to feed a hungry child, and they give all the money for furniture? And then as a backup argument, they claim, well, it's all fungible. Well, we wouldn't know if it's fungible. We wouldn't know if it freed up money that was going to be used for furniture, and now it'll be used for meals. That's for discovery. So the whole campaign was based on falsehoods. So, again, our, and then just to go back for, I'm rushed for time, I guess, for 15 seconds, but just to go back to this idea about if there's a bilateral contract, well, as Lefkowitz says, if an advertisement is not an offer but an invitation for offers, it's an invitation for an offer on the terms stated. So, yes, it's an invitation for someone to enter an online code entry with the understanding or the idea that we will give X number of cents or whatever it is to Feeding America, which for the purpose of providing a meal, or at least that will be the amount that enables a meal. And what makes also no sense is that my colleague said that, well, you can't determine what a meal costs. It's different for everybody. But ConAgra did exactly that. They said a dollar equals eight meals, 12.5 cents a meal. Do the math. So ConAgra made that exact representation. Every year they had different numbers. One year it was 11.1 cents per meal. Then each year it went down a little bit. I guess things got more efficient. Who knows? But ConAgra did exactly that. So the fact that the court doesn't know what I might spend on a meal or what my colleague does has nothing to do with this. ConAgra made those representations every year. The whole campaign was based on lies, every bit of it. If there are no other questions, I'll rest. And thank you both for the argument. Thank you. Thank you.